**OUTTEN & GOLDEN LLP**
Adam T. Klein
Ossai Miazad
Lewis M. Steel
Michael N. Litrownik
Olivia J. Quinto*
3 Park Avenue, 29th floor
New York, NY 10016
Telephone: 212-245-1000

**THE MEXICAN AMERICAN LEGAL DEFENSE AND EDUCATION FUND**
Thomas A. Saenz*
Victor Viramontes*
634 S. Spring St., 11th Floor
Los Angeles, CA 90014
Telephone: 213-629-2512

*Admitted *pro hac vice*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

RUBEN JUAREZ, individually and on behalf of all others similarly situated,

Plaintiff,

v.

THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY, INC.,

Defendant.

No. 14-cv-5107 (KBF)

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

## TABLE OF CONTENTS


INTRODUCTION .......... 1

PLAINTIFF'S ALLEGATIONS .......... 2

I. Plaintiff's Right to Work in the United States under the DACA Program .......... 2

II. Northwestern Mutual Discriminates Against Non-U.S. Citizens .......... 3

STANDARD OF REVIEW .......... 4

ARGUMENT .......... 5

I. Plaintiff Has Sufficiently Alleged Discrimination on the Basis of Alienage in Violation of § 1981 .......... 5

a. Defendant's Policy Discriminated on the Basis of Alienage, not Immigration Status Or Work Authorization .......... 6

b. Plaintiff's Claim is Supported by *Anderson v. Conboy* .......... 10

c. Plaintiff Alleges A Facially Discriminatory Policy Against Aliens .......... 12

I. Defendant's Remaining Arguments Address Claims Not Plead by Juarez .......... 14

CONCLUSION .......... 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Aluminum Warehousing Antitrust Litig.*,
No. 13 md 2481 (KBF), 2014 WL 4277510 (S.D.N.Y. Aug. 29, 2014) ....................................5

*Amini v. Oberlin College*,
440 F.3d 350 (6th Cir. 2006) ....................................................................................................13

*Anderson v. Conboy*,
156 F.3d 167 (2d Cir. 1998), *cert. dismissed*, 527 U.S. 1030 (1999) ........................2, 6, 11, 12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)......................................................................................................................1

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..................................................................................................................5, 6

*Brown v. Henderson*,
257 F.3d 246 (2d Cir. 2001)...........................................................................................2, 7, 8, 10

*Camara v. Schwan's Food Mfg., Inc.*,
No. 04 Civ. 121, 2005 WL 1950142 (E.D. Ky. Aug. 15, 2005)................................................8

*Conn. v. Teal*,
457 U.S. 440 (1982)..................................................................................................................2, 10

*De Medeiros v. Yates*,
No. 05 Civ. 397, 2011 WL 386867 (E.D. Cal. Feb. 3, 2011) ...................................................10

*Ferrill v. Parker Grp., Inc.*,
168 F.3d 468 (11th Cir. 1999) ...............................................................................................12, 13

*Graham v. Richardson*,
403 U.S. 365 (1971)......................................................................................................................12

*Hazen Paper Co. v. Biggins*,
507 U.S. 604 (1993)......................................................................................................................12

*Jordan v. Forfeiture Support Assocs.*,
928 F. Supp. 2d 588 (E.D.N.Y. 2013) ..........................................................................................5

*Krasner v. HSH Nordbank AG*,
680 F. Supp. 2d 502 (S.D.N.Y. 2010)...........................................................................................7

*In re New Oriental Educ. & Tech. Grp. Sec. Litig.*,
988 F. Supp. 2d 406 (S.D.N.Y. 2013)....................5

*Nguyen v. City of Cleveland*,
229 F.3d 559 (6th Cir. 2000) ....................2

*Pearson Educ., Inc. v. John Wiley & Sons, Inc.*,
No. 08 Civ. 6152 (KBF), 2014 WL 2506294 (S.D.N.Y. May 5, 2014) ....................4

*Saad v. Baltimore Life Ins. Co.*,
47 F. App'x 228 (4th Cir. 2002) ....................8, 12

*Sugarman v. Dougall*,
413 U.S. 634 (1973)....................12

*Takahashi v. Fish & Game Comm'n*,
334 U.S. 410 (1948)....................12

*Tolbert v. Queens College*,
242 F.3d 58 (2d Cir. 2001)....................13

**Statutes**

8 U.S.C. § 1101(a)(3)....................9

42 U.S.C. § 1981 ....................1, 6, 10

Civil Rights Act of 1991 ("the 1991 amendment") ....................10

**Other Authorities**

8 C.F.R. § 274a ....................11

## INTRODUCTION

Plaintiff's Complaint presents a clear-cut violation of 42 U.S.C. § 1981 and readily satisfies the pleading standards in Rule 8 of the Federal Rules of Civil Procedure and the minimal plausibility standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009).

Defendant made the conscious and intentional decision to deny an entire population of non-U.S. citizens the right to work. Defendant admits as much in its brief: "[Its] guidelines expressly provide for the contracting of non-U.S. citizens who are authorized to work in the U.S. *with certain types of visas*." Def. Br. at 9 (emphasis added). This admission is clear evidence of discrimination against a subset of non-U.S. citizens – including all non-U.S. citizens with DACA status. And this exclusionary policy was communicated via Defendant's corporate website to anyone seeking work. It is irrelevant that not all aliens were excluded by operation of this policy because what matters is that the Plaintiff was denied the right to work because he was an alien.

Plaintiff Juarez, an alien residing within the United States, is not a permanent resident, but is legally authorized to work under the executive order known as Deferred Action for Childhood Arrivals ("DACA") and has a Social Security number. Compl. ¶¶ 2-3, 20-21. Plaintiff sought to contract with Northwestern Mutual for a financial representative internship. Id. ¶¶ 20-30. In response, Northwestern Mutual informed him that he had to meet one of two requirements: he either had to be a U.S. citizen, or he had to be a permanent resident (without mentioning the three year continuous U.S. residency requirement). *Id.* ¶ 30. At bottom, Plaintiff's claim under 42 U.S.C. § 1981 is simple: but for his lack of U.S. citizenship, he would have been eligible to contract with Defendant. Northwestern Mutual's decision to refuse to contract with Plaintiff because of his alienage is a clear violation of § 1981 under the law of this

Circuit. *Anderson v. Conboy*, 156 F.3d 167 (2d Cir. 1998), *cert. dismissed*, 527 U.S. 1030 (1999).

Northwestern Mutual attempts to confuse the issues in this case and misapprehends Plaintiff's claims. Defendant fails to put forth any valid ground for dismissing Plaintiff's claim. Most importantly, Plaintiff's § 1981 claim is premised on Northwestern Mutual's discrimination against him and those similarly situated because *they are not U.S. citizens*. That Defendant may not discriminate against *other* aliens, in particular those who are permanent residents with three years continuous U.S. residency is irrelevant. In other words, Juarez can prove his claim even if Northwestern Mutual deems *other* classes of aliens eligible for work because contracting with some individuals in a protected class never inoculates a defendant from liability for discriminating against others. *Conn. v. Teal*, 457 U.S. 440, 452-56 (1982); *Brown v. Henderson*, 257 F.3d 246, 252-53 (2d Cir. 2001) (applying principle in intentional discrimination context). Second, because Defendant's ban on hiring aliens (other than permanent residents) constitutes a *facial* violation of § 1981, it is unnecessary for Juarez to prove further that Defendant harbored a specific animus towards aliens as a class. *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000) (citing *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985)). Finally, the Court should ignore Defendant's remaining arguments about national origin discrimination and disparate impact claims that Juarez does not plead.

## PLAINTIFF'S ALLEGATIONS

### I. Plaintiff's Right to Work in the United States under the DACA Program

Our government has determined that the nation does not benefit by rousting "productive young people," who arrived here without lawful status, "to countries where they may not have lived or even speak the language" – particularly when "many of these young people have already

contributed to our country in significant ways."[1] Thus, on June 15, 2012, Secretary Napolitano announced the Obama Administration's DACA program, which provides deferred action on deportation for a period of two years to eligible individuals (or "DACA recipients"). Deferred action constitutes a discretionary decision by law enforcement to defer legal proceedings that would remove DACA recipients from the country. The DACA program importantly provides that DACA recipients may work during the period of deferred action and obtain employment authorization documents ("EADs") from the United States Citizenship and Immigration Services ("USCIS"). As of early 2014, USCIS has approved over 500,000 requests for DACA. Compl. ¶¶ 14-18.[2]

## II. Northwestern Mutual Discriminates Against Non-U.S. Citizens

Plaintiff Juarez is a 25-year-old Mexican national residing in Yonkers, New York. *Id.* ¶ 2. He is a *summa cum laude* graduate of Lehman College, with a B.S. in Accounting, and he was recently accepted to Fordham University's School of Business to earn a M.S. in Global Finance. *Id*. ¶ 2. He has been a DACA recipient since October 25, 2012. *Id.* ¶¶ 3, 20.

In spite of his qualifications, and Defendant's initial interest in hiring him, Northwestern Mutual refused to contract with Juarez because he was not a U.S. citizen. *Id.* ¶¶ 20-30. On October 26, 2012, Juarez submitted a resume to a recruiter, Zuleyma Stryker, who visited Lehman's Bronx campus to recruit interns. *Id.* ¶ 22. Between October 6 and December 11,

---

1 Memorandum of Janet Napolitano, Secretary of Homeland Security, on "Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children" (June 15, 2012).

2 DACA recipients are not the only class of immigrants who have legal work authorization, but would not have met Northwestern Mutual's requirement that they be U.S. citizens. Northwestern Mutual's condition for aliens seeking employment also bars individuals who have been granted temporary residence, asylum, and refugee or fiancé/e status and are legally authorized to work. Compl. ¶ 19. Thus, Northwestern Mutual's policy effectively barred the most vulnerable populations of immigrants from employment.

2013, Northwestern Mutual actively recruited and interviewed Juarez. *Id.* ¶¶ 23-26. Juarez's application was advancing until recruiter Susan Lewandowski asked whether he was a U.S. citizen or had a green card, and he replied that he had DACA status and an EAD that authorized him to work in this country. *Id.* ¶ 27. Juarez was then informed that he was ineligible for work because of his lack of U.S. citizenship. *Id.* ¶ 28.

Northwestern Mutual's policy, which was in effect as of July 9, 2014, the date Plaintiff filed his Complaint, (*id.* ¶ 31), was unambiguous and inflexible. Even when Juarez informed Lewandowski within the week that his EAD was (according to his research) sufficient to meet legal requirements to work as an alien, (*id.* ¶ 29), Defendant reaffirmed its policy. Lewandowski replied, "[s]orry[,] but you have to be a US citizen or have a green card." *Id.* ¶ 30. Defendant also published this information on its website, as part of an online "assessment" form:

> Financial representatives must have at least three years of continuous U.S. residency, hold a permanent resident visa and read, write and speak English fluently. A financial representative intern must hold a current student or resident visa, have three years continuous residency or anticipated three years of continuous residency completed upon college graduation, and read, write and speak English fluently. [*Id.* ¶ 31.]

Any alien answering the residency questions on the site negatively was not permitted to advance. *Id.*

Juarez pleads a single count of violation of § 1981, and seeks certification of a class.

## STANDARD OF REVIEW

"The standard applicable to a motion to dismiss is well known: this Court accepts as true all well-pleaded allegations and construes all inferences in favor of" a plaintiff. *Pearson Educ., Inc. v. John Wiley & Sons, Inc.*, No. 08 Civ. 6152 (KBF), 2014 WL 2506294, at *1 (S.D.N.Y. May 5, 2014) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 598 (2007)). "A complaint should not be dismissed if the plaintiffs have stated enough facts to state a claim to relief that is

plausible on its face." *In re New Oriental Educ. & Tech. Grp. Sec. Litig.*, 988 F. Supp. 2d 406, 410-11 (S.D.N.Y. 2013) (quoting *Twombly*, 550 U.S. at 570) (internal quotation marks omitted). A claim has facial plausibility where the plaintiff pleads facts that permit the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *In re New Oriental*, 988 F. Supp. 2d at 411 (citing *Iqbal*, 556 U.S. at 678).

The notice pleading standard requires Plaintiff only to plead a "'short and plain statement of the claim showing that the pleader is entitled to relief" in order to 'give the defendant fair notice of what the … claim is and the ground upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U. S. 41, 47 (1957)). Plaintiff only need allege facts from which to state a claim to relief that is "plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *In re Aluminum Warehousing Antitrust Litig.*, No. 13 md 2481 (KBF), 2014 WL 4277510, at *15 (S.D.N.Y. Aug. 29, 2014) (quoting *Iqbal*, 556 U.S. at 678). The Second Circuit is particularly mindful of "hastily dismissing complaints alleging potentially meritorious claims of civil rights violations." *Jordan v. Forfeiture Support Assocs.*, 928 F. Supp. 2d 588, 610 (E.D.N.Y. 2013).

## ARGUMENT

### I. Plaintiff Has Sufficiently Alleged Discrimination on the Basis of Alienage in Violation of § 1981

Plaintiff's Complaint presents a clear-cut violation of § 1981 that readily satisfies Rule 8 of the Federal Rules of Civil Procedure. Plaintiff alleges a facially discriminatory policy of Northwestern Mutual refusing to contract with him and a similarly situated and precise sub-category of aliens because they are aliens, *i.e.*, those who are not permanent residents with at least three year continuous U.S. residency. These well-pled allegations are sufficient under the

law of this Circuit because they set out "a short and plain statement of the claim showing that the pleader is entitled to relief" under 42 U.S.C. § 1981, and give Defendant "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555; *see Anderson*, 156 F.3d at 169-70.

Defendant makes two arguments in response, both of which misapprehend Plaintiff's claim, ignore well-established principles and cases from analogous anti-discrimination law, and attempt to improperly twist and cabin the holding of *Anderson*. First, Defendant's policy is still illegal under § 1981 even if it was only directed towards Plaintiff and a similarly situated subset of aliens because, *but for their lack of U.S. citizenship* they would have been eligible to contract with Defendant. Defendant confuses this issue by arguing that it discriminated against Plaintiff because of his immigration status and/or work authorization status. Def. Br. at 9. But whatever business justification Defendant may invent for its policy is different than the explicit terms of the policy itself, which excluded Plaintiff and the proposed class because they were aliens who did not fall within the exception to its non-citizen exclusion, *i.e.*, a "green card" and three years continuous residency. Second, Plaintiff has sufficiently alleged that Defendant's policy constituted a *facial* violation of § 1981; thus, it is unnecessary for him to prove further that Defendant harbored a specific animus towards aliens as a class.

**a. Defendant's Policy Discriminated on the Basis of Alienage, not Immigration Status Or Work Authorization**

Plaintiff alleges that Defendant refused to contract with certain aliens because they are aliens, (Compl. ¶¶ 1, 28, 31, 47), not because of their "particular work authorization or immigration classification." Def Br. at 10. Plaintiff's claim does not represent an expansion of § 1981. On the contrary, Plaintiff's claim fits neatly within the confines of the statute: but for his lack of U.S. citizenship, he would have been eligible to contract with Defendant. Defendant's

argument that discrimination between aliens with different immigration statuses does not violate § 1981, (Def Br. at 7-15), is wrong, and misstates Plaintiff's claim. Northwestern Mutual bars all applicants who are not citizens unless they meet two extra conditions: being a permanent resident *and* having three years' continuous residency.

Northwestern Mutual's suggestion that a § 1981 claim must be based on discrimination against *all* aliens has no basis in either in the statutory language or the case law and violates well-established principles in anti-discrimination law. Whether Defendant discriminates consistently, inconsistently, or only against a subset of the protected class on the basis of alienage is irrelevant because Plaintiff has alleged that Defendant discriminated *against him* on such a basis. *See Brown*, 257 F.3d at 253 (intentional hostile work environment discrimination still actionable even though it might be inconsistent or against only a subset) (citations omitted); *Krasner v. HSH Nordbank AG*, 680 F. Supp. 2d 502, 517 (S.D.N.Y. 2010) ("[C]ourts have consistently emphasized that the ultimate issue is the reasons for *the individual plaintiff's* treatment, not the relative treatment of different *groups* within the workplace.") (quoting *Brown*, 257 F.3d at 252). The U.S. Supreme Court and Second Circuit have rejected the assertion that intentional discrimination claims must be all or nothing. "[D]iscrimination against one employee cannot be cured, or disproven, solely by favorable, or equitable, treatment of other employees . . . ." *Brown*, 257 F.3d at 252-53 (citing *Teal*, 457 U.S. at 455).

In this case, based on Northwestern Mutual's own calculation, nearly two million foreign nationals were automatically barred from work under its policies. Def. Br. at 4-5 n.2. This constitutes one-eighth of the resident alien population enumerated in Defendant's own statistics. (Even this statistic may understate the case, because we do not know how many green card holders also meet the separate three-year residency requirement that Defendant also imposes.

Compl. ¶ 31.) Plaintiff accepts Defendant's concession that "a determination of the percentage of foreign nationals who are green card holders is not necessary to the resolution of Northwestern Mutual's motion to dismiss." Def. Br. at 4 n.2. But discrimination against even one individual out of millions because of alienage violates the law, even if the company contracts with other aliens. *See Brown*, 257 F.3d at 252-53; *Saad v. Baltimore Life Ins. Co*., 47 F. App'x 228, 230 (4th Cir. 2002) (reversing judgment in favor of insurance company for refusing coverage to Egyptian alien, despite testimony that policy against insuring aliens was not always enforced).

Defendant cites inapposite case law to support its confused argument that it merely discriminated on the basis of work authorization or immigration classification. In *Camara v. Schwan's Food Mfg., Inc.*, No. 04 Civ. 121, 2005 WL 1950142, at *4-5 (E.D. Ky. Aug. 15, 2005), plaintiff, an applicant for asylum from Mauritania, sought to amend his complaint on the eve of trial to add a § 1981 alienage claim. Critically, he did "*not* contend that the defendants discriminated against him based upon his lack of U.S. citizenship." *Id.* at *5. Nor did he allege, as here, that the employer in that case maintained a facially discriminatory policy against a class of non-citizens. He contended only that "defendants improperly demanded documentation that was unnecessary in light of plaintiff's asylee status." *Id.* The district court held that "[i]n light of the split among the circuits on the broader issue of private alienage discrimination and the unique contours of plaintiff's claim," it would not allow the amendment because the asylee's "claim does not fall within the ambit" of § 1981. *Id.* at *6. Defendant cites this case for the proposition that "private discrimination against a specific class of non-citizens-asylees is [not] prohibited by § 1981," but in this case, it is just the reverse. Defendant does not merely single

out *one* class of non-citizens, but maintains a policy against *all* of them, unless they meet the conditions of three years of continuous U.S. residency and a green card.

Defendant's argument with respect to citizenship discrimination also misses the point. Def. Br. at 9 n.4. Courts often do make alien and noncitizen discrimination synonymous. "Alien" is a legal term that defines all noncitizens of the United States. 8 U.S.C. § 1101(a)(3). But even if the Court adopts the holding that alienage discrimination under § 1981 means citizenship discrimination, Defendants' cases do nothing to support its motion to dismiss because Plaintiff is not making a national origin discrimination, work authorization status discrimination, or immigration classification discrimination claim. His claim is alien discrimination firmly within the meaning of § 1981. He alleges a facially discriminatory policy of Defendant refusing to contract with aliens with the exception of those who are permanent residents with at least three year continuous U.S. residency.

In *Vaughn v. City of New York*, five plaintiff teachers alleged "discrimination on the basis of Caribbean national origin, [and] as to plaintiffs Henry and Davis, discrimination on the basis of alienage." No. 06 Civ. 6547, 2010 WL 2076926, at *1 (E.D.N.Y. May 24, 2010). With respect to the § 1981 alienage claim, the court observed that "[d]iscrimination on the basis of a person's status as an immigrant to the United States is not alienage discrimination *unless it is also motivated by the lack of U.S. citizenship*." *Id.* at *10 (emphasis added). Ultimately, the claim failed because there was no proof of discrimination between citizens and non-citizens, *i.e.*, the "alienage discrimination [claim] is further undermined by the fact that plaintiffs' complaint alleges similar treatment of citizen and non-citizen teachers." *Id.* at *16. In this case, by contrast, Juarez alleges that his status both as an immigrant *and* alien facially barred him from eligibility.

Defendant also mistakenly cites *De Medeiros v. Yates* for the proposition that "immigration status" discrimination is not "alienage discrimination." *See* Def. Br. at 12-13. *De Medeiros*, a § 1983 constitutional challenge, does not stand for that proposition; instead, it holds that legal permanent residents (green card holders) are not a protected class for purposes of equal protection and due process claims. *De Medeiros v. Yates*, No. 05 Civ. 397, 2011 WL 386867, at *6 (E.D. Cal. Feb. 3, 2011) ("Because lawful permanent residents are not a protected class, any regulation that treats someone differently based on his immigration status is evaluated under the rational basis test.").

Northwestern Mutual *excludes* aliens categorically *unless* they offer proof that they meet a specific immigration classification. It also excludes green card holders unless they separately meet the three-year residency requirement. It offers no justification for distinguishing among these aliens. And it is not a defense, in light of Defendant's concededly discriminatory policy, that it hires other individuals in the protected group, or discriminates against only a subset of the proposed class. *Brown*, 257 F.3d at 252-53; *Teal*, 457 U.S. at 455 ("Title VII does not permit the victim of a facially discriminatory policy to be told that he has not been wronged because other persons of his or her race or sex were hired."). The right to contract is individual to Juarez and the absent class members he seeks to represent.

**b. Plaintiff's Claim is Supported by *Anderson v. Conboy***

Plaintiff's claim is well-supported by *Anderson v. Conboy*. Contrary to Defendant's argument, *Anderson* is not limited to its facts and to employment policies that reach *all* members of a protected class. Def. Br. at 8-9. *Anderson*'s central holding, undisputed by the parties, is that 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991 ("the 1991 amendment"), prohibits alienage discrimination by private actors. 156 F.3d at 169. In *Anderson*, the plaintiff

alleged that he was terminated from employment as a business representative with Local 17 of the United Brotherhood of Carpenters and Joiners because he was a Jamaican citizen, under a bylaw that limited eligibility to "citizen[s] of the United States or Canada" and more specifically "a citizen of the country in which the Local Union is located." *Id.* at 168.

Notably in *Anderson*, as in the present case, the defendant maintained an express policy *and* there was no allegation of animus toward aliens. Defendant's lengthy discussion about the *Anderson* decision's exploration of the roots and purpose of § 1981 and the court's holding extending the protections of the statute to non-citizens, (Def. Br. at 11-13), does nothing to support its position that Plaintiff's claim in this case should be dismissed. Plaintiff is not bringing a national origin discrimination claim, nor is he bringing a claim for discrimination based on work authorization or immigration classification. Defendant attempts to misconstrue and dismiss Plaintiff's claim simply because the company carved out a subset of non-U.S. citizens whom it would not categorically exclude. This does not shield Defendant from liability for discrimination against other categories of non-citizens and nothing in the *Anderson* decision supports Defendant's contention that it should.

Defendant also argues *Anderson* forecloses Juarez's claim because it impliedly holds that § 1981 does not require a company to hire people in violation of federal immigration laws, such as IRCA, what Defendant refers to as "a rock and a hard place."[3] Def. Br. at 16-17. But no such dilemma is presented by this case. In contrast with the hypothetical scenario laid out by the Second Circuit in *Anderson*, 156 F.3d at 180, Juarez alleges that he, DACA recipients generally,

[3] Defendant's argument is also misplaced since it classifies its Financial Representatives – including interns – as independent contractors. Def. Br. at 2 n.1. Companies are not required to complete a Form I-9 for independent contractors – only for employees. 8 C.F.R. § 274a. Thus, any argument by Defendant that it had legitimate business concerns about the two-year limitation period for DACA recipients is meritless.

and other non-citizens disqualified under Defendant's discriminatory policy can legally work in this country.[4] Section 1981 need not "trump[] IRCA," (Def. Br. at 17), or any other federal immigration law in order for Juarez to state a claim for alienage discrimination. *See Anderson*, 156 F.3d at 180 ("Although the protections afforded by the IRCA overlap to some extent with those provided by Section 1981, such an overlap does not constitute a conflict between the two statutes.").

**c. Plaintiff Alleges A Facially Discriminatory Policy Against Aliens**

Defendant also tries deflecting *Anderson* by suggesting a non-statutory element: that a § 1981 plaintiff must plead that the defendant acted with specific animus or hostility toward aliens. Def. Br. at 1 (plaintiff must allege "invidious … prejudice"), *id.* at 13-15. Yet Juarez alleges the existence of a *facially discriminatory* policy, which suffices to establish a § 1981 violation. Thus no further proof of hostility or animus towards aliens is required to make out the claim.

Liability will attach in a disparate treatment case when the defendant "relie[s] upon a formal, facially discriminatory policy requiring adverse treatment" of those sharing a protected trait. *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993) (ADEA). *See also Saad*, 47 Fed. App'x at 229 (§ 1981 trial against insurance company where it was "company policy not to issue coverage on people who are not United States citizens"); *Ferrill v. Parker Grp., Inc.*, 168 F.3d

---

[4] As the Supreme Court held: "The Federal Government has broad constitutional powers in determining what aliens shall be admitted to the United States, the period they may remain, regulation of their conduct before naturalization, and the terms and conditions of their naturalization . . . . ." *Takahashi v. Fish & Game Comm'n*, 334 U.S. 410, 419 (1948); *see also Sugarman v. Dougall*, 413 U.S. 634, 647 (1973) (striking down, as a violation of the Fourteenth Amendment Equal Protection clause, city law that provided a flat ban against the employment of aliens in a wide variety of jobs); *Graham v. Richardson*, 403 U.S. 365, 374-76 (1971) ("state statute that denies welfare benefits . . . to aliens who have not resided in the United States for a specified number of years violate the Equal Protection Clause").

468, 472 (11th Cir. 1999) (§ 1981; telemarketer's race-matched pre-election "get-out-the-vote" calling campaign, with black employees assigned to black voters using a "'black script,'" while white employees called white voters using a "'white' script," is direct evidence of racially discriminatory job assignment).

So too, here, Northwestern Mutual's ban on aliens unless they possess a green card and meet the continuous residency requirement constitutes a facially discriminatory policy against aliens because they are aliens. Juarez was told that he was ineligible for a contract *both* because he was not a U.S. citizen *and* because he did not possess a green card. Compl. ¶ 30. Juarez's alienage expressly disqualified him from employment. Defendant argues that "the contract eligibility guidelines challenged here do not contain, and are not based upon, a prohibition of non-US citizens," (Def. Br. at 8), but ignores the allegation that Juarez was informed that he could have qualified as a U.S. citizen.

In other words, under § 1981, proof of "a facially discriminatory employment policy" against hiring "employees in the protected group is direct evidence of discriminatory intent." *Amini v. Oberlin College*, 440 F.3d 350, 359 (6th Cir. 2006) (quoting *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000)). As alleged, it could hardly be clearer that Juarez was barred from contracting because of alienage: he was told outright that "you have to be a US citizen or have a green card." The intent to discriminate is expressly stated in the policy, and requires no further inference. Even if Northwestern Mutual had *non*-invidious reasons for excluding aliens such as Plaintiff – such as a mistaken belief that it was required by law – such a facially discriminatory policy against aliens would violate their rights no less under § 1981.[5]

[5] Under the authority of this Circuit, it is sufficient for Juarez to show the discrimination was a "substantial" or "motivating factor" for the adverse action. *Tolbert v. Queens College*, 242

**I. Defendant's Remaining Arguments Address Claims Not Plead by Juarez**

Finally, Northwestern Mutual seeks to dismiss nonexistent claims based on national origin (Def. Br. at 7, 15 and n.4) and disparate impact (Def. Br. at 16-18) discrimination. Plaintiff alleges neither claim in his Complaint.

**CONCLUSION**

For the reasons stated herein, Plaintiff respectfully requests that the Court deny Northwestern Mutual's motion to dismiss in its entirety.

Dated: New York, New York
September 30, 2014

Respectfully submitted

By: *_/s/ Adam T. Klein_*
Adam T. Klein

**OUTTEN & GOLDEN LLP**
Adam T. Klein
Ossai Miazad
Lewis M. Steel
Michael N. Litrownik
Olivia J. Quinto*
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone: 212-245-1000

**THE MEXICAN AMERICAN LEGAL DEFENSE AND EDUCATION FUND**
Thomas A. Saenz*
Victor Viramontes*
634 S. Spring St., 11th Floor
Los Angeles, CA 90014
Telephone: 213-629-2512

*Admitted *pro hac vice*

**Attorneys for Plaintiff and the Proposed Class**

F.3d 58, 69 (2d Cir. 2001) (quoting *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977) (internal quotation marks omitted).